# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**SCOTT LEE OLSON and KACEY JEAN OLSON**,<br><br>  Debtors. | Case No. **11-60127-13** |
| **SCOTT LEE OLSON and KACEY JEAN OLSON,**<br><br>  Plaintiffs.<br><br>-vs-<br><br>**ASPIRE RESOURCES INC DBA ASPIRE SERVICING CENTER,**<br><br>  Defendant. | Adv. No. **18-00008-BPH** |

## MEMEORANDUM OF DECISION

At Butte in said District this 26th day of October, 2018.

### INTRODUCTION

This matter involves cross motions for summary judgment filed pursuant to Civil Rule 56[1] and Rule 7056 filed by Educational Credit Management Corporation

---

[1] Unless specified otherwise, all "Civil Rule" references are to the Federal Rules of Civil Procedure, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

1

("ECMC"), as the guarantor of student loans serviced by Aspire Resources, Inc., dba Aspire Servicing Center ("Aspire") and Debtor/Plaintiffs Scott Lee Olson and Kacey Jean Olson ("Debtors").[2]

ECMC's Motion requests as a matter of law, judgment that: (i) ECMC properly applied payments received from the Trustee to the student loan debts under the terms of the promissory notes and pursuant to applicable law; (ii) Debtors' have an unpaid remaining balance on their student loan debt, despite having made all the payments required under their Chapter 13 Plan[3]; and, (iii) the unpaid remaining balance is non-dischargeable, student debt, under 11 U.S.C. § 523(a)(8).

Debtors responded to ECMC's Motion with their own request for judgment as a matter of law: (i) that, at a minimum their student loan principal balance was fully paid as a result of Plan payments disbursed to ECMC by the Chapter 13 Trustee; (ii) if they owe any remaining amount to ECMC it is limited to interest that accrued on unpaid principal after filing their Chapter 13 petition; and, (iii) that any remaining amount owed to ECMC by Debtors is fixed, and not subject to the accrual of additional interest.

---

[2] ECMC's Motion and Summary Judgment Brief are ECF Nos. 18-19 ("ECMC's Motion") and Debtors' Motion and Summary Judgment Brief are at ECF No. 25-26 ("Debtors' Motion").

[3] Debtors' operative Chapter 13 Plan dated March 30, 2011, was confirmed on April5, 2011 ("Plan"). ECF Nos. 17 and 19.

2

Both parties filed separate statements of uncontroverted facts, which overlap, and demonstrate there are no genuine issues of material fact. Further, neither party filed a statement of genuine as required by Mont. LBR 7056-1(a)(1)(2). Such failure is, pursuant to Local Rule 7056-1(a)(1)(3)(d), deemed an admission by each party that no material facts are in dispute.

## UNDISPUTED FACTS

Debtors filed their voluntary Chapter 13 bankruptcy petition on January 27, 2011. At that time, both Debtors had outstanding student loan debts. Debtor Kacey Olson had student loan debt in the amount of $74,347.32. *See* Proof of Claim No. 5 ("Claim 5"). Claim 5 comprised a principal balance of $70,327.97, and unpaid, accrued prepetition interest of $4,019.35. Claim 5 further noted that interest was accruing at a rate of $11.87 per day. Debtor Scott Olson's student loan debt was $11,901.93, comprised of a principal balance of $11,702.76, and unpaid, accrued prepetition interest of $199.17. *See* Proof of Claim No. 6 ("Claim 6"). Interest was accruing at a rate of $2.64 per day under Claim 6.

Following completion of the Plan payments, the Chapter 13 Trustee filed his Final Report and Accounting. According to it, the Trustee disbursed $74,347.32 to ECMC in connection with Claim 5, and $11,901.93 in connection with Claim 6. ECMC applied those payments on July 14, 2016. According to ECMC, the unpaid balance owing by Kacey Olson under her student loan obligations was $27,522.87

3

as of July 1, 2018, consisting of an unpaid principal balance of $26,964.94 and accrued, unpaid interest of $557.93, and the unpaid balance owing by Scott Olson under his student loan obligations was $5,922.94 as of July 1, 2018, consisting of an unpaid principal balance of $5,764.10 and accrued, unpaid interest of $158.84.

While not addressed by either party, Debtors' Plan provides in paragraph 2(g) that "[n]o interest shall be paid nor accrue on any general, allowed, unsecured claims during the pendency of the Chapter 13 Plan, excluding nondischargeable student loan debt pursuant to 11 U.S.C. §523(a)(9) [sic]." Debtors' discharge was entered on August 3, 2017.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A

4

dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*; *see also Russell v. Daiichi–Sankyo, Inc.*, 2012 WL 1793226 (D.Mont. May 15, 2012).

Where the moving party has met his initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id.*

In evaluating the appropriateness of summary judgment the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court. As to materiality, the applicable substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes which are irrelevant or unnecessary to the outcome are not considered. *Anderson*, at 248.

If a fact is found to be material, summary judgment will not lie if the dispute about that fact is genuine. If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment should not be granted.

*Id.* In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. Though the *Anderson* Court stated that at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial, it also stated that if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249–50. In other words, the non-moving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

### CONTENTIONS of the PARTIES

ECMC argues that payments are applied first to interest, both pre- and post-petition interest, and then to principal, which results in outstanding principal amounts owing, with interest continuing to accrue thereon. Debtors contend that, pursuant to 11 U.S.C. § 502(b)(2), unpaid post-petition interest cannot be collected under the Plan, meaning that the payments to ECMC by the Chapter 13 Trustee

should have been applied to pay off all principal and pre-petition interest as was stated in Claims 5 and 6. Debtors further argue that any remaining amounts still owed by them to ECMC are solely for interest, and that ECMC should not be entitled to charge interest on interest. In short, Debtors do not dispute that they owe ECMC some amount, but rather the methodology used to calculate that amount.

## DISCUSSION

I. **Payments received by ECMC were applied to the Debtors' debts pursuant to the terms of applicable regulations.**

Under 34 C.F.R. § 682.209(b)(1), payments under the Federal Family Education Loan program are applied as follows:

> Except in the case of payments made under an income-based repayment plan, the lender may credit the entire payment amount first to any late charges accrued or collection costs and then to any outstanding interest and then to outstanding principal.

34 C.F.R. § 682.209(b)(1). Payments are applied similarly when a borrower on a defaulted student loan makes payments to a guaranty agency, such as ECMC in this case. *See* 34 C.F.R. § 682.404(f).

The Fourth Circuit Court of Appeals addressed the present issue in *In re Kielisch*, 258 F.3d 315 (4th Cir. 2001). In *Kielisch*, ECMC brought collection efforts against two separate debtors, alleging payments made under a Chapter 13 plan could be applied to post-petition interest prior to applying payments to the principal balance. *Id.* at 317. The *Kielisch* Court recognized that student loans are not

dischargeable under 11 U.S.C. § 523(a)(8), meaning they "pass unaffected through the bankruptcy estate for purposes of the debtor's liability." *Id.* at 321.

The Court found that, although § 502 precluded claims for post-petition interest against the bankruptcy estate, the statute did not provide a basis to direct how Chapter 13 plan payments must be applied. *Id.* at 323-24. Without provisions to the contrary, the Court found ECMC could apply plan payments first to interest, then to principal pursuant to 34 C.F.R. § 682.404(f). *Id.* at 325. The Fourth Circuit's reasoning in *Kielisch* is persuasive. Absent an express prohibition in the bankruptcy code, such treatment is consistent with the loan agreements between the parties and the applicable federal regulations.

## II. Neither § 502(b), nor the Debtors' confirmed Plan result in this Court reaching a different conclusion than the *Kielisch* Court.

### A. Debtors' confirmed Chapter 13 Plan did not require application of the payments in a manner different than applicable federal regulations.

A confirmed Chapter 13 plan binds the debtor and creditor, whether or not the claim of a creditor is provided for by the plan. 11 U.S.C § 1327. The plan acts as a contract between the Debtors and Debtors' creditors. *In re Than*, 215 B.R. 430, 435 (9th Cir. BAP 1997). Creditors who do not object to the Chapter 13 plan are deemed to accept the plan, including any modifications to the terms of the debt that are clearly and conspicuously provided in the plan. *In re Walker*, 128 B.R. 465, 468 (Bankr. D. Idaho 1991). Provisions seeking to discharge student loan debt can be

binding upon a creditor if the creditor does not object to the plan. *Espinosa*, 553 F.3d at 1205.

In the present case, Debtors' Plan was confirmed on April 5, 2011. The Plan provides for Debtors' student loan debts, noting "no interest shall be paid nor accrue on any general, allowed, unsecured claims during the pendency of the Chapter 13 Plan, **excluding non-dischargeable student loan debt pursuant to 11 U.S.C. § 523(a)(9)** [sic]." (emphasis added) 11-60127-BPH, ECF. No. 17, ¶ 2(g), March 30, 2011. (Note, the reference to § 523(a)(9) appears to be a typographical error and an actual reference to § 523(a)(8). Section 523(a)(9) relates to operation of a vehicle while intoxicated and does not apply to context of the plan in this case).

The Plan language regarding post-petition interest is not contrary to the existing contracts between the parties, or the applicable federal regulations and the Plan does not seek to discharge Debtors' student loan debts. The only provision in the Plan that seeks to modify Debtors' obligations to ECMC relates to payments, noting "the Trustee shall pay dividends, to the extent possible, to allowed unsecured, non-priority claims on a *pro rata* basis." 11-60127-BPH, ECF. No. 17, ¶ 2(f), March 30, 2011. In effect, this provision modified the payment terms of the debts under the Plan, but left the remaining contract terms intact.

ECMC filed Claims 5 and 6 in Debtors' main bankruptcy case in the amounts of $74,347.32 and $11,901.93, respectively. The Claims note that they are

unsecured and are not subject to priority, meaning the claims would be paid based on the *pro rata* treatment referenced within the plan. Notably, Debtors' Chapter 13 plan contains no language modifying the application of payments to ECMC's loans. Since the Plan does not modify the application of funds to ECMC's loans, the terms of the underlying contracts between Debtors and ECMC that are consistent with the Plan remain in effect.

### B. Consideration of § 502(b) does not change the analysis.

The bankruptcy code prohibits claims for post-petition interest to avoid unfairness among competing creditors and to ease administration of the estate. *Bruning v. United States*, 376 U.S. 358, 362, 84 S. Ct. 906, 908-09 (1964); 11 U.S.C. § 502(b)(2). "Debt" is defined broadly under the bankruptcy code and constitutes a "liability on a claim." 11 U.S.C. § 101(12). The term debt encompasses liabilities on allowed and disallowed claims. *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 218 B.R. 916, 930 (9th Cir. BAP 1998). Thus, a creditor's claim against the bankruptcy estate may be limited by § 502, even though the underlying liability against a debtor continues to increase by accruing post-petition interest.

Section 502 does not mention "debts," and it does not direct the application of payments a creditor receives from the bankruptcy estate. Without an explicit prohibition in § 502, the applicable regulations of 34 C.F.R. § 682.209(b)(1) and 34 C.F.R. § 682.404(f) apply to the outstanding obligation. A creditor is only entitled

10

to collect the amounts asserted in its proofs of claim from the estate pursuant to § 502, but § 502 does not prohibit creditors from applying Chapter 13 plan payments to outstanding post-petition interest prior to paying down the principal balance. *See Kielisch*, *supra*.

In this case, ECMC filed claims 5 and 6 in the amounts of $74,347.32 and $11,901.93, respectively. The Chapter 13 trustee paid the full Claim amounts under Debtors' Plan to ECMC. While ECMC cannot collect additional funds from the bankruptcy estate, ECMC properly applied the payments to its underlying debt obligation, and the remaining outstanding balance is not discharged under § 523 and remains an outstanding obligation payable by Debtors to ECMC.

Debtors, citing *In re Pardee,* 218 B.R. 916 (9th Cir. BAP 1998), contend that post-petition interest cannot be paid through a Chapter 13 plan. *Pardee* is distinguishable from the present case. In *Pardee*, the Chapter 13 plan specifically accounted for the debtor's student loans, noting "[creditor] shall receive the total amount . . . for its claim <u>and any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the plan.</u>" *Id.* at 918.

The plan in *Pardee* was confirmed, and the student loan creditor did not object to its treatment under the plan. *Id.* Under that plan, the *Pardee* Court, citing *Hanna v. United States*, 872 F.2d 829, 831 (8th Cir. 1989), found that post-petition interest is disallowed against the bankruptcy estate, but debtors remain liable for post-

11

petition interest and nondischargeable loan obligations. The *Pardee* Court correctly found that § 502(b)(2) disallows claims and recovery of unmatured interest from the bankruptcy estate. Ultimately, the *Pardee* Court held that the debtor's obligation was discharged based on the express language included in the plan. Unlike *Pardee*, the Plan in this case does not contain express language purporting to discharge Debtors' student loan obligations, so the *Pardee* holding does not reach the issue before us and is inapplicable to the present analysis.

The Court is similarly not persuaded by Debtor's reliance on *Educ. Credit Mgmt. Corp. v. Kirkland, (In re Kirkland),* 600 F.3d 310, 316 (4th Cir. 2010), *In re Wagner*, 200 B.R. 160, 163 (Bank. N.D.Ohio 1996), *In re Shelbayah*, 165 B.R. 332, 337 (Bankr.N.D.Ga.1994), and *Branch v. UNIPAC/NEBHELP (Matter of Branch)*, 175 B.R. 732 (Bankr.D.Neb.1994). Such cases are distinguishable. For example, in *Kirkland*, the 4th Circuit Court of appeals reviewed a Bankruptcy Court's determination regarding post-petition interest and collection costs. The Fourth Circuit's analysis related to whether post-petition interest claims fall within the Bankruptcy Court's subject matter jurisdiction. The Court acknowledged that post-petition interest cannot be claimed against the bankruptcy estate, but ultimately found that the bankruptcy court lacked subject matter jurisdiction to deny collection costs and award post-petition interest. The Court in *Kirkland* noted that the creditor could not include post-petition interest in its bankruptcy proof of claim, but the Court

did not address the present matter: whether application of payments by the estate to interest, first, then to the outstanding principal balance, is proper.

*Wagner*, *Shelbayah*, and *Branch* all assert that post-petition interest is not allowed as a claim against the bankruptcy estate. The *Wagner*, *Shelbayah*, and *Branch* courts all acknowledge that post-petition interest on student loans remains an obligation of the debtor at the conclusion of the plan, but none of the cases cited directly state that post-petition interest is the only obligation that remains outstanding following completion of a Chapter 13 plan. None of the cases referenced above reach the issue here relating to the application of plan payments to interest, then outstanding principal.

### III. The remaining amounts are dischargeable.

Under 11 U.S.C. § 1328(a), an Order granting a discharge in a Chapter 13 case does not discharge educational loans that fall under 11 U.S.C. § 523(a)(8). A Chapter 13 plan may discharge student loan debt if the confirmed plan specifically includes language purporting to discharge student loan debt and the creditor does not object to the plan. *See Espinosa v. United Student Aid Funds*, 553 F.3d 1193, 1205 (9th Cir. 2008); *In re Pardee*, 218 B.R. at 930. Student loan debt may also be discharged upon a finding the debt would impose an undue hardship on the debtor. 11 U.S.C. § 523(a)(8).

Here, the undisputed facts show that the underlying debts constitute

educational loans. The Plan specifically provides that interest would continue to accrue post-petition on Debtors' nondischargeable student loan debt. Further, Debtors have not asserted undue hardship in this case. Since the undisputed facts provide no exception to § 523(a)(8), ECMC's debts remain outstanding and enforceable against Debtors following completion of the Chapter 13 plan.

## CONCLUSION

Based on the foregoing, the Court finds that ECMC properly applied the payments made by the Trustee first to the interest, and then the principal of its underlying debts, consistent with 34 C.F.R. § 682.209(b)(1). Further, nothing in the Plan nor § 502, alters this analysis. As a result, there remain outstanding amounts owing by Debtors to ECMC, and those amounts are attributable a student loan debt and are not dischargeable under § 523(a)(8). Therefore,

IT IS ORDERED that the Court will enter a separate order denying Debtors' motion for summary judgment and granting ECMC's motion for summary judgment. The Court will enter a separate judgment in favor of ECMC and against Debtors.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana